UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DINERO MARTEZ WARREN                    Case No. 13-15230

        Plaintiff,                       Marianne O. Battai
v.                                      United States District Judge

COMMISSIONER OF SOCIAL SECURITY,        Michael Hluchaniuk
                                        United States Magistrate Judge
        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 14)**

## I.   PROCEDURAL HISTORY

A.   Proceedings in this Court

On March 24, 2013, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for supplemental security income benefits. (Dkt. 2). This matter is before the Court on cross-motions for summary judgment. (Dkt. 10, 14).

B.   Administrative Proceedings

Plaintiff filed the instant claim on September 17, 2010, alleging disability beginning January 11, 1994. (Dkt. 6-2, Pg ID 46). Plaintiff's claims were initially

disapproved by the Commissioner on January 5, 2011. *Id*. Plaintiff requested a hearing and on July 9, 2012, plaintiff appeared, with counsel, before Administrative Law Judge ("ALJ") Henry Perez, Jr., who considered the case de novo. (Dkt. 6-2, Pg ID 46-55). In a decision dated August 7, 2012, the ALJ found that plaintiff was not disabled. *Id*. Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on October 21, 2013, denied plaintiff's request for review. (Dkt. 6-2, Pg ID 25-29); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings under Sentence Four.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1981 and was 29 years of age on the date that the application was filed. (Dkt. 6-2, Pg ID 54) Plaintiff had no past relevant work. *Id*. The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the

application date.  (Dkt. 6-2, Pg ID 48).  At step two, the ALJ found that plaintiff's

schizoaffective disorder and personality disorder were "severe" within the

meaning of the second sequential step.  *Id*.  At step three, the ALJ found no

evidence that plaintiff's combination of impairments met or equaled one of the

listings in the regulations.  (Dkt. 6-2, Pg ID 49).

The ALJ determined that plaintiff had the residual functional capacity

(RFC) to perform a full range of work at all exertional limitations with the

following limitations:

> After careful consideration of the entire record, Claimant
> is found to have the residual functional capacity to
> perform a full range of work at all exertional levels but
> with the following nonexertional limitations: Claimant is
> limited to tasks that have one- or two-step instructions.
> Claimant is limited to tasks that require a limited
> (frequent, but not constant) need for substantial
> concentration. Claimant is limited to unskilled work.

(Dkt. 6-2, Pg ID 50).  At Step Four, the ALJ found that plaintiff had no past

relevant work.  However, the ALJ determined that, considering plaintiff's age,

education, experience, and RFC, there were jobs that exist in sufficient numbers

that plaintiff can perform and therefore, plaintiff had not been under a disability

from the alleged onset date through the date of the decision.  (Dkt. 6-2, Pg ID 54).

B.    Plaintiff's Claims of Error

According to plaintiff, the ALJ erred in failing to include plaintiff's social

3

limitations in his RFC assessment and in the hypothetical question posed to the

vocational expert.  In determining whether plaintiff met a listing, the ALJ found

that he had moderate limitations with regard to social functioning, writing:

> Claimant testified that he does not like to be around
> people because he thinks they are talking about him.
> Claimant's social worker testified that he will not sit in
> the lobby of the agency where he treats because there are
> too many people coming and going. She also stated that
> Claimant makes her identify herself more than once
> when she visits the home.

(Tr. 25).  Furthermore, the ALJ found that plaintiff had "personality disorder" as

one of his severe impairments (Tr. 24), an apparent reference to the diagnosis

noted by Dr. Balunas, a psychological consultant who set forth that diagnosis in

his analysis in the original denial notice.  (Tr. 72).  The ALJ indicated that he

accorded some weight to this expert's opinion.  (Tr. 29).  In that regard, Dr.

Balunas also noted that plaintiff was moderately limited in social functioning.  (Tr

74).  The doctor further stated that plaintiff "is able to perform tasks involving

occasional incidental contact with the public."  (Tr 29).  According to plaintiff,

this opinion is consistent with the testimony of plaintiff's case manager and

therapist, Phyllis Clemons, whose testimony was also given some weight by the

ALJ.  (Tr. 29).  In particular, the ALJ indicated that Ms. Clemons' "observations

that Claimant is paranoid, guarded, and isolative are consistent with the record as a

whole..." (Tr. 29).  Ms. Clemons testified that plaintiff would not even easily

admit her to his home, even though she visited two or three times a month (Tr. 50-51), that he would not sit with his back to a window or door (Tr. 50), that he could not sit in the lobby at his doctor's office because of other people coming and going (Tr. 51-52), and that he could not live independently because he was too guarded and would not be able to even get food or attend doctor's appointments on his own. (Tr. 55).

Furthermore, consultative psychological examiner Shelly Bonanno diagnosed antisocial personality disorder. (Tr 275). This was her sole diagnosis, and it led to an assessment of a significantly low GAF score of 47. (Tr. 275). She characterized plaintiff as "guarded" (Tr. 27), "frightened and anxious." (Tr. 274). In addition, the CNS treatment records document a long history of paranoia and hearing voices. (Tr. 289, 361, 368, 373). Those records also indicate that plaintiff was "withdrawn, isolative and irritable." (Tr. 354, 361, 368, 373). Plaintiff contends that he obviously has significant issues as to social functioning, as confirmed by the evidence of record, his own testimony, and the ALJ's own findings. However, plaintiff contends that the RFC ultimately assessed makes absolutely no accommodation for those limitations. (Tr. 26). In addition, the hypothetical question posed to the VE included no mention of social limitations. (Tr. 56). "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion

5

that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F3d 504, 516 (6th Cir. 2010). As a result, plaintiff maintains that defendant has failed to sustain its burden of proving that there were jobs that exist in significant numbers in the national economy that plaintiff could still perform, and his claim should be granted accordingly. At the least, the case should be remanded for consideration of plaintiff's social functioning limitations.

In his decision, the ALJ stated that "[w]eight is given to the diagnosis and GAF score assigned to Claimant by Dr. Yoon throughout his treatment at CNS..." (Tr. 28). However, plaintiff points out that the ALJ never explained the degree of weight accorded. More importantly, even after acknowledging that Dr. Yoon was "a treating source." (Tr. 28), the ALJ failed to further acknowledge that special considerations apply to the amount of weight to which the doctor's opinions were entitled by virtue of the "treating physician rule." In this case, however, the ALJ did not even mention the rule, let alone give good reasons why he was not following it. This represents reversible error as a matter of law. The error is only compounded where, as noted below, the ALJ only gave "some" weight, or did not say how much weight he was giving, to the opinions of all other medical experts.

The ALJ noted that plaintiff underwent a mental consultative examination by Shelley Bonanno, but plaintiff contends that the ALJ failed to indicate whether

6

he was giving her opinions any weight or not. There is simply no mention of the subject, and certainly no explicit finding on this critical point. The ALJ concluded as follows: "It appears that Claimant was extremely uncooperative at the examination, which makes the GAF score indicating serious symptoms or impairment somewhat questionable." (Tr. 28). However, according to plaintiff, there is no indication in the report that plaintiff was in any way "uncooperative." Ms. Bonanno never so stated. She mentioned that plaintiff's stream of mental activity was vague and that he was a poor historian, but plaintiff maintains that this is a symptom of his condition rather than an indictment of his cooperation. Perhaps the best indication of the ALJ's mind set was a reference to plaintiff's "inability/refusal to name any past Presidents or current events." (Tr. 28). Of course, inability and refusal are not the same thing at all, and only one of those alternatives suggests noncooperation.

Plaintiff also points out that not only did Ms. Bonanno not criticize plaintiff's cooperation, she specifically noted that, if anything, he was minimizing rather than exaggerating his symptoms. (Tr. 273). Furthermore, Ms. Bonanno assessed a GAF score of 47 (Tr. 275), completely consistent with treating Dr. Yoon's score of 45. (Tr. 373). According to plaintiff, this consistency only buttresses the credibility of the opinions of both experts, a fact the ALJ ignored. Plaintiff contends that, given Ms. Bonanno's diagnosis of antisocial personality

7

disorder (Tr. 275) and the ALJ's disregard for the significance of that diagnosis, the ALJ's handling (or non-handling) of her opinions is not harmless.

The ALJ indicated that he was giving some weight to the opinions of Dr. Balunas, reasoning as follows: "Dr. Balunas is a non-treating, non-examining source, but his opinion that Claimant is able to perform unskilled work with one or two steps is consistent with the adopted residual functional capacity." (Tr. 29). This analysis seems to have flipped the question. The ALJ should be reviewing the medical evidence, adopting the portions most persuasive to him, and then crafting an RFC accordingly. Instead, the ALJ in this case seems to suggest that he adopted a particular RFC assessment, and then gave weight to medical opinions that supported his conclusions. According to plaintiff, the error is inherent. Furthermore, Dr. Balunas indicated that plaintiff had moderate limitations as to social functioning, and that he could only work when limited to occasional contact with the general public. (Tr. 74). As plaintiff previously pointed out, the ALJ's RFC assessment and hypothetical question failed to acknowledge these significant portions to the doctor's opinion, representing further error.

The ALJ also indicated that he gave some weight to the testimony of Ms. Clemons, who was plaintiff's case manager and therapist. (Tr. 49-50). The ALJ indicated that, since there are no treatment records from Ms. Clemons in evidence, it was "difficult to determine the consistency of her statements." (Tr. 29).

8

However, the ALJ specifically stated that her "observations that Claimant is paranoid, guarded, and isolative are consistent with the record as a whole..." (Tr. 29). Nevertheless, there is no indication the ALJ utilized her impressions in the slightest since, as previously recounted, they confirmed plaintiff's inability to function in a social setting. Equally importantly, Ms. Clemons attempted to offer her impressions as to limitations plaintiff might require, but the ALJ refused to permit her to do so unless she could rely on personal observations of the behavior noted. (Tr. 53). He further stated that the issue of limitations is "something that's reserved for the Social Security Administration." (Tr. 53). However, even opinions from sources that are not technically deemed "acceptable medical sources" must be "evaluated on key issues such as impairment severity and functional effects." SSR 96-3p. As a result, the ALJ impermissibly limited the testimony of Ms. Clemons, who actually may be the best person to speak as to plaintiff's residual abilities. The Commissioner has recognized that information from such sources as therapists "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 96-03p; *Cole v. Astrue*, 661 F3d 931 (6th Cir. 2011). That should especially be the case where, as in this case, the opinions of the therapist were largely consistent with those of Drs. Yoon and Balunas.

9

As this analysis makes clear, the ALJ failed to sufficiently or properly weigh the opinions of the medical sources of record, in accordance with the Commissioner's own established policies and practices. However, the Commissioner's regulations are binding on her. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646 (6th Cir. 2011). Plaintiff submits that, when the record is properly reviewed, it is clear that the granting of an award is the only appropriate result. That being so, the case should be remanded for the entry of such an award. *Faucher v. Sec'y of HHS*, 17 F.3d 171, 176 (6th Cir. 1994). At the very least, plaintiff contends that the case should be remanded for further proceedings in accordance with the regulations and rulings, based on substantial evidence.

The record in this matter contains evidence regarding plaintiff's physical condition, most significantly his right shoulder impairment, from a single medical source – his treating physician, Dr. Beale. This physician rendered a physical capacities evaluation form which set forth significant physical limitations. (Tr. 309-311). However, the ALJ gave "little weight" to this assessment (Tr. 25), and declared plaintiff's shoulder condition to be nonsevere. (Tr. 24-25). According to plaintiff, the ALJ did not state what alternative evidence he was relying on after rejecting the opinions of Dr. Beale, undoubtedly for the simple reason that there was none. No other physician was asked to or did opine as to specific limitations, and the ALJ did not request a consultative examination as to plaintiff's physical

10

limitations.  Plaintiff maintains that the ALJ was obliged to render findings in reliance on some medical evidence.  "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."  *Simpson v. Comm'r of Soc. Sec.*, 344 Fed.Appx. 181,194 (6th Cir. 2009), quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).  Furthermore, "[t]he ALJ must not substitute his own judgment for a doctor's conclusions without relying on other medical evidence or authority in the record."  *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at *13 (S.D. Ohio 2008), quoted with approval in *Sparck v. Comm'r of Soc. Sec, No.* 2012 WL 4009650, at *8; *see also*, *Wyatt v. Comm'r of Soc. Sec.*, 2013 WL 4483074 (E.D. Mich. 2013).  Given that there was no other support, plaintiff contends that the ALJ has reversibly erred.

Compounding this error, Dr. Beale was plaintiff's treating physician; however, according to plaintiff, the ALJ failed to even consider, let alone apply, the "treating physician rule."  Additionally, the ALJ stated that "Dr. Beale's lack of any restrictions on Claimant's use of his upper extremities is inconsistent with his continuous statements that Claimant is unable to work due to shoulder impingement." (Tr 25).  Plaintiff contends, however, that Dr. Beale did impose restrictions on plaintiff's use of his upper extremities – he limited plaintiff to only occasional lifting of no more than 20 pounds.  (Tr. 375).  That is clearly a restriction on the use of the arms and shoulder.  Since the jobs the ALJ found

plaintiff could perform were of "medium-duty" positions (Tr. 39), plaintiff's inability to lift more than 20 pounds would have been work-preclusive. Medium work requires lifting up to 50 pounds at a time. 20 C.F.R. § 404.1567(c).

The ALJ also discounted the doctor's findings because an MRI showed "only a small grade 1 SLAP tear of the glenoid labrum." (Tr 24) However, plaintiff points out that Dr. Beale never qualified this finding with the word "only," and it is his unrebutted medical opinion that should control as to the impact of this small tear, not the ALJ's opinion, unsupported by any other evidence. Plaintiff also points out that Dr. Beale set forth numerous findings in support of his conclusions, in addition to the MRI results. He noted that plaintiff had symptoms of impingement syndrome of the right shoulder with crepitus (Tr. 299); and compression and distraction testing produced neck pain (Tr. 299). As a result, there were objective findings to further support Dr. Beale's conclusions, and plaintiff contends that the ALJ could not simply reject them without either applying the treating physician rule or relying on contrary evidence.

As a result, the ALJ clearly erred in finding that plaintiff's shoulder impairment was not severe. Defendant will likely contend that this error is harmless, in that even nonsevere impairments must be considered in the disability analysis. *See e.g.*, *Maziarz v. Sec'y of HHS*, 837 F.2d 240, 244 (6th Cir. 1987). However, the error is not harmless if the impairment deemed nonsevere does not

receive further analysis in the disability evaluation.  *See e.g.*, *Al Ghawalb v. Comm'r of Soc. Sec.*, 2012 WL2804837 (E.D. Mich. 2012).  In the instant case, after deeming the physical problems nonsevere, plaintiff says that the ALJ never mentioned them again, and did not include their consideration in his disability analysis, which is further reversible error.

The regulations require an ALJ to determine whether the claimant is disabled using the normal five-step sequential evaluation process, without discounting or disregarding the assumed effects of substance use disorders.  Only after finding a disability while considering the substance abuse, may the ALJ then determine what limitations would remain in the absence of alcoholism or drug addiction, so that a determination may be made as to whether claimant's substance abuse was a contributing factor material to the disability.  20 C.F.R. § 404.1535. In other words, the effects of alcoholism or drug addiction are not removed from the equation unless disability has already been found.  "To find that drug addiction is a contributing factor material to the determination of disability without first finding the claimant disabled, as the ALJ did here, is to put the cart before the horse."  *Williams v. Barnhart*, 338 F Supp 2d 849, 962-863 (M.D. Tenn. 2004). According to plaintiff, this has been held to be reversible error, in and of itself. *Mathious v. Barnhart*, 490 F Supp2d 833 (E.D. Mich. 2007).  Here, plaintiff maintains that the ALJ clearly seemed to violate this rule by writing as follows:

13

> It should also be noted that Claimant told Dr. Yoon in
> June 2011 that he had used cannabis daily since his
> release from prison in August 2010 (Exhibit 10F, p.24).
> As such, one must question the extent to which
> Claimant's alleged symptoms are exacerbated or even
> caused by such frequent marijuana use.

(Tr. 29). Plaintiff contends that this analysis clearly reverses the equation,

purporting to disregard symptoms that might potentially arise from substance

abuse prior to a finding of disability. In other words, the cart has clearly been put

before the horse. Plaintiff argues that this represents further error, which should

result in reversal by this Court.

    C.    <u>The Commissioner's Motion for Summary Judgment</u>

    According to the Commissioner, the ALJ reasonably found that plaintiff's

alleged right shoulder impairment and back pain were not severe impairments

because they did not cause more than minimal limitations on his ability to perform

basic work activities. (Tr. 24). In making this finding, the ALJ considered the

medical and treatment record related to plaintiff's complaints of pain. (Tr. 24).

Plaintiff initially visited orthopedist James J. Beale, M.D. in February 2011, and

complained of pain in his lower back and right shoulder. (Tr. 291). Plaintiff

reported that his pain stemmed from a recent motor vehicle accident for which he

did not seek immediate medical treatment. (Tr. 291). Dr. Beale noted tenderness,

a decreased range of motion in the lumbar spine, and pain on straight leg raising.

(Tr. 292).  Dr. Beale diagnosed Plaintiff with status post motor vehicle accident, cervical myositis, dorsal myofascitis, and lumbosacral myositis.  (Tr. 292).  In March 2011, plaintiff complained of the same symptoms and also stated that he had been dropping things.  (Tr. 293).  Dr. Beale prescribed Vicodin and physical therapy.  (Tr. 293).  In April, June, July, and September 2011, plaintiff reported the same symptoms.  (Tr. 295-302).

The Commissioner points out that the ALJ acknowledged these reports but also noted that MRI results from April and June 2011 showed that plaintiff's thoracic and lumbar spine were normal.  (Tr. 24).  The thoracic spine MRI showed no evidence of disc protrusion or stenosis, and the lumbar spine MRI showed no evidence of herniation.  (Tr. 309-10).  Images of plaintiff's shoulder showed only a "small grade" tear.  (Tr. 310).  According to the Commissioner, the minimal objective evidence failed to support plaintiff's allegations of a severe physical impairment.  As explained in *Despins v. Commissioner of Social Security*, 257 Fed. Appx. 923, 930 (6th Cir. 2007), the mere existence of impairments does not establish that a claimant was significantly limited from performing basic work activities for a continuous period of time.

The Commissioner also points out that the ALJ was mindful of the fact that Dr. Beale consistently declared plaintiff disabled from work, housework, and driving from the date of his initial visit in February 2011 until December 2011.

(Tr. 24, citing Tr. 291-346, 375-76). Dr. Beale also consistently recommended that plaintiff attend physical therapy three times per week. (Tr. 291-346). According to the Commissioner, the ALJ reasonably gave little weight to Dr. Beale's opinion, explaining:

> As no images of Claimant's back or shoulder were available until May and June 2011, the first four months of disability status were based entirely on Claimant's subjective complaints. This renders the opinion less persuasive, as does the fact that Dr. Beale put Claimant on disability on the day of their initial meeting. The images obtained did not support the additional months of a finding of disability — the spinal MRIs were normal and the right shoulder MRI showed only a small tear (Tr. 24).

The ALJ's explanation provided a reasonable basis to discount Dr. Beale's opinion. *See* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."); *see also Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 156 (6th Cir. 2009) ("Here, substantial evidence supports the ALJ's determination that the opinion of Dr. Boyd, Poe's treating physician, was not entitled to deference because it was based on Poe's subjective complaints, rather than objective medical data."); *McCoy ex rel. McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995) (finding that ALJ reasonably discounted treating physician's opinion where the claimant's subjective complaints were unsupported

16

by objective findings).  The ALJ further reduced the weight given to Dr. Beale's opinion because plaintiff failed to comply with treatment recommendations and did not attend therapy regularly.  According to the Commissioner, plaintiff's non-compliance undermines the reliability of Dr. Beale's opinion.  *See* 20 C.F.R. § 416.930(a) ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.").  The ALJ explained that plaintiff's poor attendance at therapy further undermined his allegations of a severe physical impairment.  (Tr. 25).

While plaintiff suggests that objective evidence supports Dr. Beale's opinion, the Commissioner points out that in support of this contention, he relies on Dr. Beale's recitation of his alleged symptoms.  (Pl.'s Br. 20).  The Commissioner maintains that plaintiff's subjective complaints are not objective medical findings sufficient to establish a severe impairment.  Moreover, Dr. Beale's opinion is deficient because he never provided any explanation as to why plaintiff's "small" shoulder tear would cause significant limitations on his ability to lift or carry.  20 C.F.R. § 416.927(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion.").  According to the Commissioner, the ALJ reasonably noted that the objective evidence did not support plaintiff's allegations and gave good reasons for explaining why Dr. Beale's overly restrictive opinion was not entitled to weight.  Accordingly,

17

substantial evidence supports the ALJ's finding that plaintiff did not have a severe physical impairment.  The Commissioner also argues that plaintiff's suggestion that he had severe physical impairments is undermined by the fact that he failed to describe any physical impairments when he filed his application for benefits (Tr. 69); rather, plaintiff only identified his mental impairments as being disabling (Tr. 69), suggesting that plaintiff did not perceive his physical impairments as causing a disability.

In evaluating whether plaintiff's mental impairments satisfied the criteria of a Listing, the ALJ noted that plaintiff had "moderate" limitations in social functioning.  (Tr. 25).  Plaintiff argues that the ALJ failed to account for those "moderate" limitations in his residual functional capacity (RFC) finding.  *See* 20 C.F.R. § 416.945 (an RFC is the most an individual can still do despite his limitations).  According to the Commissioner, plaintiff is wrong because the ALJ limited plaintiff to unskilled work.  "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.  A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." SSR 85-15, 1985 WL 56857, at * 4.  Although plaintiff's difficulties interacting with

18

others was well-documented throughout the record, the Commissioner contends that he failed to show that he would have a "substantial loss" in his ability to respond appropriately to supervision or coworkers. Accordingly, the Commissioner maintains that the ALJ properly accounted for plaintiff's social limitations, and plaintiff has not shown that he would be incapable of performing the social requirements of unskilled work.

The ALJ also found that plaintiff was capable of performing unskilled work with one- or two-step instructions and tasks that required a limited need for sustained concentration. (Tr. 26). The ALJ's finding is supported by the opinion of Leonard C. Balunas, Ph.D., who reviewed plaintiff's medical records on behalf of the state agency. Dr. Balunas also opined that plaintiff had "no problems with attention and there is sufficient concentration to perform simple 1 - 2 step tasks all on a routine and regular basis." (Tr. 75). Dr. Balunas's opinion is substantial evidence in support of the ALJ's RFC finding.

Plaintiff contends that the ALJ failed to explain what weight he gave to the opinion of his treating source, Dosyng Yoon, M.D. (Pl.'s Br. 12-13). Plaintiff's argument is belied by the fact that Dr. Yoon did not offer a medical opinion. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you

19

can still do despite impairment(s), and your physical or mental restrictions." 20

C.F.R. § 416.927(a)(2).  Dr. Yoon diagnosed plaintiff with schizoaffective

disorder, and the ALJ credited that diagnosis.  (Tr. 28, citing Tr. 368).  The ALJ

also gave weight to the Global Assessment of Functioning (GAF) score of 45,

reflecting serious symptoms, assigned by Dr. Yoon.  (Tr. 28, citing Tr. 368).  The

ALJ, however, noted that Dr. Yoon continued to assign plaintiff a GAF score of

45 even though plaintiff reported that his symptoms improved.  (Tr. 28).  In any

event, the Commissioner contends that the ALJ accounted for plaintiff's

significant mental limitations by severely restricting the type and complexity of

work he could perform.  According to the Commissioner, plaintiff has failed to

explain what, if any, other "medical opinions" from Dr. Yoon he believed were

entitled to greater weight.

　　　Plaintiff similarly argues that the ALJ failed to give proper weight to the

medical opinion from Shelly Bonanno, M.A., a limited licensed psychologist who

evaluated plaintiff in June 2011.  (Pl.'s Br. 14-16).  Again, according to the

Commissioner, plaintiff fails to identify what "medical opinion" from Ms.

Bonanno deserved greater weight.  Ms. Bonanno recorded plaintiff's complaints

and examination responses and diagnosed him with anti-social personality

disorder.  (Tr. 275).  Ms. Bonanno did not offer an assessment of plaintiff's

functionality or opine how plaintiff's mental impairments would limit his ability to

work.  To the extent that Ms. Bonanno diagnosed plaintiff with anti-personality disorder, the Commissioner says that the ALJ gave this diagnosis little weight because he was not diagnosed with this condition by any treating source.  (Tr. 28). The ALJ also questioned the GAF score of 47 assigned by Ms. Bonanno because plaintiff appeared to be uncooperative during the examination, which may have resulted in a lower score.  (Tr. 28, citing Tr. 275).  For example, the ALJ pointed out that prison records showed that plaintiff was of "above average" intelligence. (Tr. 254).  During his incarceration, plaintiff was observant, supported the growth of other inmates, was self-aware and perceptive, and gained maturity (Tr. 254), which was inconsistent with his inability to respond to basic questions or name past Presidents during his evaluation with Ms. Bonanno.  (Tr. 274).  The ALJ did, however, credit Ms. Bonanno's notation that plaintiff was distrustful of others as it was consistent with his other treatment notes.  (Tr. 28).  According to the Commissioner, to the extent that plaintiff displayed difficulties during his evaluation with Ms. Bonanno, the ALJ accounted for those difficulties by limiting plaintiff to unskilled work with one- or two-step instructions and tasks that required a limited need for sustained concentration.  (Tr. 26).  Although plaintiff summarily concludes that the ALJ did not properly weigh Ms. Bonanno's findings, the Commissioner maintains that he has not explained why Ms. Bonanno's findings would reflect greater limitations than the ALJ found.

21

Plaintiff's case manager and social worker, Phyllis Clemons, testified at the administrative hearing.  Plaintiff contends that the ALJ did not credit Ms. Clemons's testimony that plaintiff had difficulties in a social setting.  (Pl.'s Br. 16-17).  According to the Commissioner, the ALJ specifically accounted for plaintiff's on-going difficulties with social interaction by limiting him to unskilled work.  (Tr. 26).  According to the Commissioner, Ms. Clemons' testimony did not reflect that Plaintiff would have a "substantial loss" in his ability to work with others.  Plaintiff also argues that the ALJ improperly limited Ms. Clemons' testimony.  (Pl.'s Br. 16-17). At the hearing, plaintiff's attorney asked Ms. Clemons whether she believed plaintiff would be able to sustain any type of competitive employment.  (Tr. 53).  The ALJ prevented Ms. Clemons from responding to that question, explaining that such an issue was reserved to the Commissioner.  (Tr. 53).  According to the Commissioner, the ALJ's instruction is consistent with the regulations, which state that an opinion that a claimant is "unable to work" is a legal opinion on an issue reserved to the Commissioner.  20 C.F.R. § 416.927(d)(2).  Thus, the ALJ was not obligated to adopt or allow such a conclusory legal opinion.  Although the ALJ did not allow Ms. Clemons to provide an opinion on whether plaintiff could work, he did allow Ms. Clemons to testify about plaintiff's limitations with regard to his ability to sustain functioning. (Tr. 50).  Ms. Clemons explained that plaintiff had difficulty around others and did

22

not feel comfortable leaving the house. (Tr. 50-52). She described plaintiff as "isolative" and "guarded." (Tr. 51) The ALJ noted that Ms. Clemons's testimony concerning plaintiff's social difficulties was consistent with Dr. Yoon's treatment record (Tr. 29) and accounted for plaintiff's social difficulties in his RFC finding. (Tr. 26). According to the Commissioner, plaintiff has not explained why Ms. Clemons's testimony would indicate that he had greater limitations than the ALJ found.

While plaintiff argues that the ALJ failed to evaluate his use of marijuana, the Commissioner maintains that the ALJ properly evaluated whether plaintiff's impairments were disabling without discounting plaintiff's use of marijuana. In fact, the ALJ noted that plaintiff reported to Dr. Yoon that he used cannabis twice daily and questioned whether plaintiff's symptoms may have been exacerbated by his use of marijuana. (Tr. 29). Plaintiff suggests that the ALJ put the "cart before the horse" in making this analysis. To the contrary, according to the Commissioner, the ALJ did not discount the effects of plaintiff's drug use when assessing plaintiff's disability claim. Rather, the ALJ relied on the medical evidence and plaintiff's testimony to determine that plaintiff remained capable of performing unskilled work despite his admitted drug use. (Tr. 25). Thus, the Commissioner asserts that plaintiff has not shown that the ALJ's analysis was faulty.

23

D.   <u>Plaintiff's Reply</u>

Plaintiff urges the Court to reject the Commissioner's argument that limiting plaintiff to "unskilled work" addressed his social impairments.  While the Commissioner contends that an individual who can perform unskilled work has not sustained a "substantial loss" of the ability "to respond appropriately to supervision, coworkers, and usual work situations," citing SSR 85-15, plaintiff maintains that this is not a demonstration that plaintiff's social limitations were taken into account.  If anything, plaintiff argues, it is an acknowledgment that they were not.  However, the ALJ himself found that such limitations existed, and the opinions of Ms. Clemons (Tr. 29, 50-52, 55), Dr. Balunas (Tr. 29,74), and Dr. Bonanno (Tr. 274-275), confirmed that plaintiff had significant social limitations. (Tr. 74).  Thus, plaintiff asserts that the ALJ's failure to include such limitations in the RFC constitutes reversible error.

As to the Commissioner's argument that "Dr. Yoon did not offer a medical opinion," plaintiff points out that Dr. Yoon offered precisely the type of information included in the definition of "medical opinion," including a diagnosis, a GAF (Global Assessment of Functioning) score reflecting the severity of the condition, and plaintiff's symptoms.  According to plaintiff, the Commissioner is really arguing that the ALJ did not have to adopt Dr. Yoon's opinions, which is a different issue, however, from the simple requirement that the ALJ expressly

24

indicate the degree of weight he is according the doctor's opinion.  The Commissioner does not truly argue that he did so, and this represents error. Plaintiff further contended that, as treating physician, the ALJ was obliged to accord Dr. Yoon's opinions greater weight, in particular his opinions as to the severity of plaintiff's mental condition.  While the regulations and rulings impose particular duties with regard to the opinions of a treater, 20 CFR §416.927(d)(2); SSR 96-2p, the ALJ's failure to even indicate the degree of weight he accorded the treater, let alone his obligations under these authorities, represents clear and reversible legal error.

Plaintiff again points out that there was no indication in Dr. Bonanno's report or findings that plaintiff was uncooperative.  Instead, the ALJ simply made that determination himself, as the Commissioner now does.  However, "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, 344 Fed.Appx. 181, 194 (6th Cir. 2009), quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).  And, again, plaintiff asserts that while the ALJ indicated that he was giving some weight to the opinions of Dr. Balunas (Tr. 29), but did not address the social limitations the doctor would also have imposed.  (Tr. 74-75).

Plaintiff disagrees with the Commissioner's position that Ms. Clemons was permitted to testify as to plaintiff's limitations, but not the ultimate conclusion that

25

plaintiff could not work, which is reserved to the Commissioner.  In plaintiff's view, this is an overly generous view of the testimony, in that the ALJ precluded not just a question as to whether plaintiff could sustain competitive employment, but also why he could not do so – in other words, what limitations would preclude it.  (Tr. 53).  Testimony from Ms. Clemons that plaintiff was "isolative" and "guarded" – cited by the Commissioner as concerning limitations (Def's Br., at 16) – actually describes symptoms, not limitations.  Even opinions from sources that are not technically deemed "acceptable medical sources" must be "evaluated on key issues such as impairment severity and functional effects."  SSR 96-3p. Plaintiff contends, therefore, that the ALJ erred in cutting Ms. Clemons's testimony short.

While the Commissioner indicated that the ALJ was justified in rejecting Dr. Beale's opinions, despite the treating physician rule, because his thoracic and lumbar spine MRI results were negative and shoulder images revealed "only" a small SLAP tear, plaintiff contends that the Commissioner did not address plaintiff's further argument that Dr. Beale set forth numerous other findings in support of his conclusions.  He noted that plaintiff had symptoms of impingement syndrome of the right shoulder with crepitus (Tr. 299) and that compression and distraction testing produced neck pain.  (Tr. 299). As a result, the ALJ could not simply reject them despite the treating physician rule and in the absence of

26

contrary evidence.  While the Commissioner complains that Dr. Beale did not explain why he would limit plaintiff as he did, plaintiff points out that no other physician or medical source contradicted his opinion.  The Commissioner also points to plaintiff's lack of treatment, which the ALJ mentioned as a reason to discredit Dr. Beale's opinions.  However, before using noncompliance with medical treatment to discredit or deny a claim, the ALJ is obliged to determine whether there is "justifiable cause" for the noncompliance. SSR 82-59.  The ALJ made no attempt to do so, but perhaps he could have begun the inquiry with plaintiff's social limitations.  In any event, plaintiff maintains that the ALJ did not complete the requisite analysis.  Finally, plaintiff contends that the Commissioner did not address his argument that, even if his physical problems are nonsevere, nonsevere impairments must be considered in the disability analysis.  *See e.g.*, *Maziarz v. Sec'y of HHS*, 837 F.2d 240, 244 (6th Cir. 1987).  According to plaintiff, this error is not harmless if, as here, the impairment deemed nonsevere does not receive further analysis in the disability evaluation. *See e.g.*, *Al Ghawalb v. Comm'r of Soc. Sec.*, 2012 WL 2804837 (E.D. Mich. 2012).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

28

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486

29

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing, *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

    B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

1.    Social functioning

The ALJ clearly found that plaintiff suffered from moderate limitations in

social functioning.  Plaintiff argues that the RFC fails to account for his moderate

limitation.  The Commissioner contends that the ALJ's conclusion that plaintiff

could perform "unskilled work" sufficiently accommodated plaintiff's moderate

limitation in social functioning.  The Commissioner's argument is not supported in

the regulations or the case law.  SSR 85-15 provides that the basic mental

demands of unskilled work "include the abilities to understand, carry out and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting on a sustained basis." SSR 85–15, 1985 WL 56857, *4.  Although unskilled work deals primarily "with things (rather than data or people)", 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202(g), someone performing unskilled work must be able to respond appropriately to supervision and coworkers on a sustained basis. SSR 85–15, 1985 WL 56857, *4.  A substantial loss of this ability to deal with supervisors and coworkers "severely limit[s] the potential occupational base." *Id*.  Here, nothing in the ALJ's RFC or hypothetical questions posed to the VE accounted for plaintiff's moderate limitations in social functioning, such as limited interaction with the public or co-workers.  Thus, there is no testimony regarding what effect such limitations have on the occupational base or the particular unskilled jobs identified by the vocational expert.  Other cases have concluded that moderate limitations in social functioning do, in fact, contrary to the Commissioner's contention, affect the occupational base.  *See e.g.*, *Anthony v. Comm'r of Soc. Sec.*, 2012 WL 4483790 (N.D. Ohio 2012) (While the ALJ accommodated plaintiff's moderate social limitations in the RFC, by using the Grids, the ALJ failed to account for the erosion of the occupational base); *Lowther v. Colvin*, 2013 WL 5743855 (D. S.C. 2012) ("Moderate difficulties in maintaining social function

34

would affect the occupational base for unskilled work, precluding reliance on the Grids to direct a finding of not disabled.").  Here, while the ALJ did not rely on the Grids, there is still nothing in the RFC or the hypothetical questions posed to the VE that accommodates the moderate limitation in social functioning as found by the ALJ.  Thus, this matter must be remanded for additional vocational testimony, fully accounting for plaintiff's moderate social limitations.

Plaintiff also argues that the ALJ failed to give substantial or appropriate weight to the various medical opinions regarding plaintiff's mental limitations. However, the Commissioner points out that none of the medical sources (with the possible exception of Ms. Clemons, which will be addressed separately below) provided any additional opinions regarding any specific limitations on plaintiff's functioning.  Rather, plaintiff seems to be arguing that the diagnoses and GAF scores assigned by such medical sources were not given sufficient weight. However, simply because plaintiff suffers from a certain condition or carries a certain diagnosis does not equate to disability or a particular RFC.  Rather, the residual functional capacity circumscribes "the claimant's residual abilities or what the claimant can do, not what maladies a claimant suffers from–though his maladies will certainly inform the ALJ's conclusion about the claimant's abilities."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002).  "A claimant's severe impairment may or may not affect his or her functional capacity

35

to work.  One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, at *5 (E.D. Mich. 2004).  "The regulations recognized that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e).  Thus, the mere existence of any condition from which plaintiff may have suffered does not necessarily establish any functional limitation or disability.  Significantly, plaintiff has failed to point to any opinion showing that he had greater limitations than the ALJ found.  *See Maher v. Sec'y of Health and Human Servs.*, 898 F.2d 1106, 1109 (6th Cir. 1987), citing *Nunn v. Bowen*, 828 F.2d 1140, 1145 (6th Cir. 1987) ("lack of physical restrictions constitutes substantial evidence for a finding of non-disability.").  As the court pointed out in *Davis v. Comm'r of Soc. Sec.*, 2012 WL 4378428, *13 (E.D. Mich. 2013), a claimant's diagnoses and GAF scores—standing alone—were not "medical opinions" and, even if they were medical opinions, the claimant must still show how a particular diagnosis and a GAF score translates into functional limitations.  *See also*, *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 511 (6th Cir. 2006)("'In the absence of any evidence indicating that [the doctor] assigned this GAF score [50] because he perceived an impairment in plaintiff's ability to work, the score, standing alone, does not establish an impairment

seriously interfering with plaintiff's ability to perform basic work activities.'") (quoting *Quaite v. Barnhart*, 312 F.Supp.2d 1195, 1200 (E.D. Mo. 2004)).  Thus, the undersigned finds no error in this regard.

As to Ms. Clemons' testimony, the ALJ and the Commissioner bring up a fair point that her treating records were not included in the record for the ALJ to assess along with her testimony.  On remand, those treating records should be provided to the ALJ for evaluation, along with any opinions Ms. Clemons would like to offer regarding plaintiff's functional limitations.

### 2.     Treating physician - Dr. Beale

The undersigned agrees with plaintiff that the ALJ failed to give sufficiently good reasons for not giving controlling weight to the opinions of Dr. Beale, plaintiff's treating physician during the relevant time period.  As both parties acknowledge, greater deference is generally given to the opinions of treating medical sources than to the opinions of non-treating medical sources.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).  "Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion."  *Id*. at 406 (citing § 404.1527(d)(2)).  Indeed, SSR 82-62 requires that "[t]he explanation of the decision must describe the weight attributed the pertinent medical and non-medical factors in the case and

reconcile any significant inconsistencies.  Reasonable inferences may be drawn, but presumptions, speculations and suppositions must not be used."   As plaintiff points out, several of the reasons stated by the ALJ are not supported by the record.  For example, the ALJ did not consider any reasons for plaintiff's poor attendance at physical therapy, including his mental impairments or financial reasons.  The ALJ also did not consider the clinical findings, other than imaging, that Dr. Beale mentioned in his notes.  In addition, the ALJ found Dr. Beale's opinions inconsistent because he did not impose any physical limitations based on his shoulder injury.  However, as plaintiff points out, Dr. Beale imposed a lifting restriction of 25 pounds, which would affect the occupational base for medium work.  As the Sixth Circuit stated:

> This requirement is not simply a formality; it is to safeguard the claimant's procedural rights.  It is intended "to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [] he is not.

*Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citation omitted).

Moreover, if the ALJ determined that plaintiff's treating physician's opinions should not be given controlling weight despite the medical evidence in support, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship,

supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 582 F.3d 399, 406 (6th Cir. 2009). This was not done either. And, even if the opinions were not entitled to controlling weight, they were entitled to deference. 20 C.F.R. § 404.1527(d)(2)(I). As explained in SSR 96-2p:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

The ALJ failed to adequately address why Dr. Beale's opinions should not be given controlling weight or even deference, as required by the regulations. 20 C.F.R. § 404.1527(d)(2). Although the ALJ's finding that plaintiff was not disabled ultimately may be justified, if an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, the Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243 (citation omitted).

A related problem in this case is the lack of any other medical opinion regarding plaintiff's functional limitations. There is no consulting physician opinion in the record regarding plaintiff's physical condition. No other treating physician or any other consulting or examining physician offered any other opinions regarding plaintiff's functional limitations.[1] Thus, we are left with the

---

[1] The undersigned also notes that in this case, the single-decision maker (SDM) model was used pursuant to 20 C.F.R. § 404.906(b)(2), which provides streamlined procedures as an experiment, in which State Agency disability examiners may decide cases without documenting medical opinions from State Agency medical consultants. The Programs Operations Manual System ("POMS"), however, requires it to "be clear to the appeal-level adjudicator when the SSA-4734-BK [the PRFC assessment form] was completed by an SDM *because SDM-completed forms are not opinion evidence at the appeal levels*." POMS DI § 24510.05 (emphasis added). Rather, "[w]hether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b).

In this case, there is no Disability Determination and Transmittal form or PRFC assessment form signed by a medical advisor as to plaintiff's physical impairments in this record, and thus no medical expert's opinion on the issue of equivalency. (Dkt. 6-3, Pg ID 93). The great weight of authority holds that a record lacking any medical advisor opinion on equivalency requires a remand. *Stratton v. Astrue*, 2012 WL 1852084, at *13 (D.N.H. May 11, 2012) (collecting cases); *see also Byberg v. Comm'r of Soc. Sec.*, 2013 WL 1278500, at *2 (E.D. Mich. Mar. 27, 2013) ("Defendant's attempt to expand the purposes of the SDM model beyond the initial determination of disability and into the proceedings before the ALJ is misplaced."); *Harris v. Comm'r of Soc. Sec.*, 2013 WL 1192301, at *8 (E.D. Mich. Mar. 22, 2013) (remanding because a medical opinion on the issue of equivalence is required, regardless of whether the SDM model is implicated); *Hayes v. Comm'r of Soc. Sec.*, 2013 WL 766180, at *8-9 (E.D. Mich. Feb. 4, 2013) (remanding because no expert opinion on equivalence in the record), *adopted by* 2013 WL 773017 (E.D. Mich. Feb. 28, 2013); *Maynard v. Comm'r of Soc. Sec.*, 2012 WL 5471150 (E.D. Mich. Nov. 9, 2012) ("[O]nce a hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on the issue of equivalence."). While the undersigned is not necessarily convinced that plaintiff can show that his physical impairments satisfy the equivalency requirements, the undersigned finds that the lack of an expert medical opinion on the issue of equivalency is problematic and violated the requirements of SSR 96-6p. For this additional reason, the undersigned recommends that, on remand, the ALJ should obtain the opinion of a qualified medical advisor on the issue of equivalence as to plaintiff's physical

circumstance of the ALJ interpreting raw medical data without the benefit of an expert medical opinion.  Importantly, in weighing the medical evidence, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).  Accordingly, "an ALJ may not substitute his [or her] own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Id*. (internal quotations omitted); *see also Bledsoe v. Comm'r of Social Sec*., 2011 WL 549861, at *7 (S.D. Ohio Feb. 8, 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings."); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at *13 (S.D. Ohio Apr. 14, 2008) ("The ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record."). In other words, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio June 9, 2011), *adopted by* 2011 WL 3566009 (S.D. Ohio Aug. 12, 2011).

---

impairments.

The undersigned recognizes that the final responsibility for deciding the RFC "is reserved to the Commissioner." 20 C.F.R. § 404.1527(d). Nevertheless, courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data. *See Isaacs v. Astrue*, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) ("The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because '[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms.'"), quoting *Deskin v. Comm'r Soc. Sec.*, 605 F. Supp.2d 908, 912 (N.D. Ohio 2008); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the [RFC] determination."); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence.").

Although ultimately a finding of no disability at either step four or five of the sequential evaluation may be appropriate in this case, substantial evidence

does not exist on the record to support the current RFC determination. The only functional physical limitations in the record are those found in Dr. Beale's records, which the ALJ discredits, finding them inconsistent with the medical evidence. There is no RFC determination by a consulting physician. Thus, the ALJ's RFC determination (at least in part) was not based on any medical opinion but was apparently formulated based on his own independent medical findings. Under these circumstances, and given that the matter will be remanded for violation of the treating source rule, the undersigned suggests that a remand is necessary to obtain a proper medical source opinion to support the ALJ's residual functional capacity finding.

### 3. Substance abuse

In 1996, the Social Security Act was amended to provide that "[a]n individual shall not be considered disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). The Commissioner implemented this standard by enacting 20 C.F.R. §§ 404.1535 and 416.935, which "clearly" require that the five step sequential evaluation process, found in 20 C.F.R. § 404.1520, be followed in the adjudication of disability "before any consideration is given to whether drug addiction [or alcohol abuse] is the cause of such disability."

43

*Williams v. Barnhart*, 338 F.Supp.2d 849, 862 (M.D. Tenn. 2004), citing *Drapeau v. Massanari*, 255 F.3d 1211, 1214-15 (10th Cir. 2001); *see also Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003); *Wilby v. Astrue*, 2010 WL 2802713, at *9 (N.D. Ohio 2010); *Goins v. Astrue*, 2010 WL 55687, at *5 (N.D. Ohio 2010); *Stroud v. Comm'r of Soc. Sec.*, 2011 WL 4576032, *11-12 (E.D. Mich. 2011). Thus, "[t]o find that drug addiction is a contributing factor material to the determination of disability without first finding the [plaintiff] disabled ... is to put the cart before the horse." *Williams*, 338 F.Supp.2d at 862.

If the five step sequential evaluation process, without removing the effects of substance abuse disorders from consideration, indicates that the plaintiff is not disabled then there is no need to continue with the substance abuse materiality analysis of 20 C.F.R. §§ 404.1535 and 416.935. *Brueggemann*, 348 F.3d at 694-95 ("If the gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent."); *see also Fastner v. Barnhart*, 324 F.3d 981, 986 (8th Cir. 2003); *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001); *Williams*, 338 F.Supp.2d at 863. Once the gross total of the plaintiff's exertional and non-exertional limitations, including the effects of his substance abuse, reveal that the plaintiff is disabled, the adjudicator must determine whether his substance

44

abuse is a "contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a). The claimant bears the burden of demonstrating that substance abuse was not a factor contributing to his disability. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122-25 (2d Cir. 2012); *see also Zarlengo v. Barnhart*, 96 Fed.Appx. 987, 989-90 (6th Cir. 2004).

Because plaintiff was found not to be disabled, the ALJ was not required to decide the issue of whether substance abuse was material to a finding of disability. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013). In this case, the ALJ observed that plaintiff's marijuana use may have exacerbated his symptoms, but did not find him to be disabled, even considering this use. However, since remand is recommended for other reasons, the undersigned also suggests that if plaintiff "is found on remand to be disabled, the materiality of his [marijuana] abuse needs to be reevaluated with proper attention to the record." *Gayheart*, 710 F.3d at 381.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings under Sentence Four.

45

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

46

Date: February 18, 2015          s/Michael Hluchaniuk
                                 Michael Hluchaniuk
                                 United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on February 18, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                 s/Tammy Hallwood
                                 Case Manager
                                 (810) 341-7887
                                 tammy_hallwood@mied.uscourts.gov